IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JADEN DAVID NORTON, | : | Civil No.  3:23-CV-763 |
| | : | |
| Plaintiff | : | |
| | : | |
| v. | : | (Magistrate Judge Carlson) |
| | : | |
| FRANK BISIGNANO,[1] | : | |
| Commissioner of Social Security, | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM OPINION

### I.    Introduction

This case presents a recurring scenario and persistent error which Courts have identified relating to analysis of emotional impairments and reminds us of a fundamental truth: Social Security appeals lie at the intersection of law and medicine. While the disability determination is ultimately a question of law, that legal issue is often necessarily shaped by medical opinions. Informed decision-

---

[1] Frank Bisignano became the Commissioner of Social Security on May 6, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano should be substituted as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

1

making in this field therefore requires that legal and medical decisionmakers share a common and commonly understood lexicon.

What then happens when judges, lawyers and medical personnel ascribe different meanings to terms which may determine the outcome of disability decisions? Oftentimes the result is confusion which defeats reasoned analysis.

So it is here.

The plaintiff, Jaden Norton, applied for disability citing a cascading array of severe physical and mental impairments, conditions which Norton stated left him unable to work. Norton's treating caregiver agreed, stating that he was totally disabled by these emotional impairments. However, the Administrative Law Judge (ALJ) who decided this case disagreed with this assessment and denied this claim. In doing so, the ALJ endeavored to navigate an array of internally inconsistent medical opinions from non-treating sources.  First, the ALJ considered two opinions by state agency experts which used a legal term of art in a casual and casually incoherent way. These state agency experts indicated that Norton's mental impairments were not totally disabling but then stated that he could understand one-to-two-step tasks. These were curious opinions because the experts' references to one-to-two-step tasks involved a term of art in Social Security practice which connotes jobs limited to reasoning level 1 since the definition of this reasoning level

is confined to jobs which entail: "Apply[ing] commonsense understanding to carry out simple one- or two-step instructions." Dictionary of Occupational Titles, Appendix C - Components of the Definition Trailer, 1991 WL 688702. Thus, the state agency experts' opinions that Norton could perform one- and two-step tasks were tantamount to a finding that he was extremely limited in meeting the mental demands of the workplace and could only perform the most rudimentary of tasks, reasoning level 1 jobs.

The medical experts' casual use of a term which has legal significance was then compounded by the ALJ who found these medical opinions persuasive but did not include the one-to-two-step limitation in Norton's residual functional capacity (RFC) assessment. Thus, the ALJ arrived at a mental residual functional capacity assessment for Norton which was seemingly unmoored to any medical opinion and concluded that he could perform jobs which placed greater mental demands upon Norton than the one-and two-step tasks described by the medical opinions which the ALJ found persuasive.

Norton now appeals this decision, in part challenging the ALJ's mental RFC analysis. While Norton's legal challenge is cast broadly, we find that at least one narrow and specific error compels remand. In our view, the ALJ's analysis of Norton's mental RFC runs afoul of a basic legal tenet which has gained broad

3

acceptance by the Courts. While the ALJ may choose which medical opinions are persuasive, "[f]or each limitation opined necessary by a persuasive medical source, the ALJ is obligated to either: (1) incorporate that limitation in the claimant's RFC, or (2) explain the basis for discounting that limitation. Such an obligation ensures that any omission was intentional and supported by substantial evidence in the record." Cruz v. Bisignano, No. 1:24-CV-1966, 2025 WL 2813882, at *7 (M.D. Pa. Sept. 30, 2025) (citing Steinmetz v. Colvin, Civ. No. 23-CV-2066, 2025 WL 36159, *7 (M.D. Pa. Jan. 6, 2025); Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979)). Therefore, "when a medical opinion is found persuasive and contains a limitation to one- and two-step tasks, the ALJ is obligated to either: (1) include the limitation in the RFC and limit the claimant to reasoning level one occupations, or (2) identify the substantial evidence that the ALJ is relying on in rejecting the limitation." Cruz, 2025 WL 2813882, at *8.

Applying these legal benchmarks, Courts have frequently held that the unexplained failure of an ALJ to incorporate a one-to-two-step task limitation set forth in a persuasive medical opinion constitutes error which may compel remand.[2]

---

[2] See e.g., ADRIENNE LOMBARDO, Plaintiff v. FRANK BISIGNANO, Comm'r of Soc. Sec., Defendant., No. 4:24-CV-56, 2026 WL 674198, at *1 (M.D. Pa. Mar. 10, 2026); SARAH C., Plaintiff, v. FRANK BISIGNANO, Defendant., No. 1:23-CV-01828, 2026 WL 625094, at *1 (M.D. Pa. Mar. 5, 2026); FRED MCCLEARY,

4

Finding that this error has occurred in the instant case, we will order that this case be remanded for further consideration by the Commissioner.

## II. Statement of Facts and of the Case

### A. Introduction

On March 12, 2021, Jaden Norton applied for disability and disability insurance benefits along with supplemental security income pursuant to Titles II and XVI of the Social Security Act, alleging an onset of disability beginning April 30, 2020. (Tr. 16). In these applications Norton alleged that he was disabled due to a cascading array of physical and mental impairments, including obesity, degenerative disc disease, migraines, post-traumatic stress disorder (PTSD), mood disorder, anxiety disorder, borderline personality disorder, attention deficit hyperactivity

---

Plaintiff v. FRANK BISIGNANO, Comm'r of Soc. Sec., Defendant., No. 4:25-CV-26, 2026 WL 625113, at *1 (M.D. Pa. Mar. 5, 2026); Delillo v. Bisignano, No. 4:25-CV-523, 2026 WL 592389, at *1 (M.D. Pa. Mar. 3, 2026); Whitney v. Bisignano, No. 4:24-CV-1950, 2026 WL 522922, at *10 (M.D. Pa. Feb. 25, 2026); Cruz v. Bisignano, No. 1:24-CV-1966, 2025 WL 2813882, at *7 (M.D. Pa. Sept. 30, 2025); Michelle M. v. Bisignano, No. 3:23-CV-02163, 2025 WL 2713737, at *7 (M.D. Pa. Sept. 23, 2025); Warren v. Dudek, No. 1:24-CV-635, 2025 WL 1168276, at *6 (M.D. Pa. Apr. 22, 2025); Shipman v. Kizakazi, No. 3:22-CV-00636, 2023 WL 5599607, at *10 (M.D. Pa. Aug. 29, 2023).

disorder (ADHD), impulse control disorder, chronic pain syndrome, and right shoulder joint replacement. (Tr. 18).

Norton was born on August 9, 1978, and was 41 years old at the time of the alleged onset of his disability, making him a younger worker under the Commissioner's regulations. (Tr. 27). He graduated from high school and attended college classes online. (Id.) He had prior employment as a pharmacy technician, a laborer, a brake repairer, an automobile mechanic helper, and an electric supply servicer. (Id.)

## B. **Norton's Mental Impairments and the Expert Opinions Regarding Those Limitations.**

While Norton's applications cited a series of physical and emotional impairments, on appeal we have focused on his mental state. With respect to his psychological impairments, the ALJ observed that:

> The claimant has insomnia and has nights where he does not sleep much. He has PTSD with symptoms of night terrors and flashbacks. He has difficulty socializing. The claimant sees a therapist every week and sees a psychiatrist once a month. The claimant has difficulty concentrating. He gets panic attacks where he cannot breathe and his chest hurts.

(Tr. 21).

Norton and his father confirmed that these psychological conditions affected his ability to meet the demands of the workplace. As Norton explained:

6

> The claimant initially alleged disability due to chronic back pain, pain since spinal fusion, right shoulder pain, anxiety, depression, PTSD, ADHD, IBS, and migraine headaches (Ex. 2E). On his Function Report, the claimant indicated that he is unable to work due to the combination of his physical and mental impairments. He cannot stand for long periods of time and gets anxiety and panic attacks. His impairments affect his ability to remember, concentrate, focus, understand, follow instructions, get along with others, use hands, climb stairs, complete tasks, walk, sit, kneel, lift, squat, bend, stand, and reach.

(Tr. 20-21). These reports were corroborated by Norton's father, who stated that plaintiff: "has ADHD, anxiety, PTSD, and depression. [Norton's] learning difficulties limit his ability to complete tasks and concentrate." (Tr. 21).

The clinical record, while extensive, was more complex and in some respects contradictory. The longitudinal medical record of Norton's mental impairments revealed a lengthy treatment history. In some instances, the clinical findings were relatively unremarkable; on other occasions they were more severe. As the ALJ reported:

> Regarding his mental impairments, the claimant's primary care physician managed his medications until he was able to find a psychiatrist. The record showed that he regularly saw a therapist (Exs. 4F/100, 8F, 19F, 20F). In August 2021, the claimant reported doing well and using medical marijuana for sleep, pain, and PTSD with benefit (Ex. 10F/2). The claimant received hormone replacement therapy (HRT) for 8 years. Treatment records noted that he felt well on HRT and had no issues with the testosterone injections. The records also noted a stable mood (Ex. 18F/12).

7

> Objective findings on mental status examination are not entirely consistent with the claimant's complaints. Upon examination in May 2020, the claimant had a depressive mood and affect but normal appearance, behavior, thought processes, insight, orientation, speech, thought content, and judgment (Ex. 8F/157). In July 2020, the claimant presented as alert and oriented x3 with normal mood and affect (Ex. 3F/23). Treatment records from January 2021 to April 2021 showed the claimant to have a casual appearance and cooperative behavior upon examination. He reported increased depression but had normal motor activity, speech, thought processes, and perception. He was alert with fair insight and judgment. The claimant had adequate eye contact, stable affect, intact cognition, and adequate attention/concentration (Ex. 6F). Therapy records from April 2021 noted the claimant to have a moderately anxious mood, but the examination findings were otherwise within normal limits (Ex. 8F/211). A mental status examination in August 2021 was within normal limits except for reported increased depression (Ex. 10F/3).

(Tr. 23).

Given this somewhat complicated and contradictory clinical history, the medical opinion evidence was particularly significant in determining whether Norton's emotional impairments were wholly disabling. On this score, three sources opined regarding the gravity of Norton's mental state.

First, Norton's treating physician, Dr. Andreas Achilleos, submitted a medical questionnaire on February 18, 2022. (Tr. 1473-78). In this questionnaire, Dr. Achilleos stated that, due to his physical and emotional impairments, Norton's prognosis was poor. (Tr. 1473). According to the doctor, Norton suffered from depression, anxiety, PTSD, and ADD. (Tr. 1474). These impairments frequently

8

interfered with Norton's concentration. (Tr. 1474, 1477). Thus, while the doctor suggested that Norton might be able to perform some simple tasks, Dr. Achilleos also opined that these emotional limitations would often impede Norton's ability to stay on task and would result in absenteeism at work with Norton missing four days of work per month. (Tr. 1477-78).

In contrast, two non-treating, non-examining state agency sources reached very different conclusions based upon the same clinical record. A June 8, 2021, initial assessment by Dr. Karen Plowman found that Norton was moderately limited in a number of spheres of workplace functioning, including understanding detailed instructions, working with others, and adapting to change in the job site. (Tr. 128-31). According to Dr. Plowman, Norton "is able to meet the mental demands for *simple, one to two step tasks on a sustained basis* despite the limitations associated with [these] impairments." (Tr. 132) (emphasis added). These conclusions were echoed in an October 19, 2021, reconsideration evaluation by Dr. Molly Cowan who found that Norton was moderately limited in terms of interacting with others, maintaining concentration for extended periods, carrying out detailed instructions, and responding to workplace changes. (Tr. 163-64). Given these limitations Dr. Cowan concluded that "[Norton] can perform *one- or two-step, routine tasks in a stable enviro[nment]*." (Tr. 164) (emphasis added). These findings were significant

9

since, under the Dictionary of Occupational Titles, the ability to perform one-to-two-step tasks confines a worker to reasoning level 1 jobs, the most severe restriction on workplace reasoning. See Dictionary of Occupational Titles, Appendix C - Components of the Definition Trailer, 1991 WL 688702. Therefore, the one-to-two-step functional capacity found by the state agency experts implied a very high degree of mental impairment.

C. **The ALJ Hearing and Decision**

It was against this medical backdrop that Norton's disability claim came to be heard by the ALJ on April 27, 2022, at which Norton and a Vocational Expert (VE) testified. (Tr. 34-79). In his testimony Norton explained that he had tried to work but had to leave several jobs when he could not meet the physical and mental demands of work. (Tr. 39-41). In terms of his mental health, Norton described flashbacks and night terrors which caused him to awaken screaming. (Tr. 64). He also reported concentration difficulties and panic attacks accompanied by breathlessness and chest pains. (Tr. 65). He further stated that he left one job due to his heightened anxiety. (Tr. 66). The VE, in turn, testified that Norton could perform the jobs of marker, office helper, order caller and photocopying machine operator. (Tr. 73). All of these

tasks entailed a reasoning level of 2,[3] reasoning levels which exceeded to one-to-two-step limitations opined by the state agency experts, but the VE was never asked to reconcile this testimony with these state agency expert opinions which stated that Norton could perform one-to-two-step tasks. (Tr. 73-75). Thus, the disparity between the state agency expert opinions, which described Norton's ability to perform one-to-two-step tasks, and the reasoning level 2 jobs identified by the VE remained unrecognized and unreconciled at this hearing.

Following this hearing, on May 16, 2022, the ALJ issued a decision denying Norton's application for benefits. (Tr. 12-33). In that decision, the ALJ first concluded that the plaintiff met the insured status requirements of the Social Security Act through December 31, 2024, and had not engaged in substantial gainful activity since May 30, 2020, the amended alleged onset date. (Tr. 17). At Step 2 of the sequential analysis that governs Social Security cases, the ALJ found that Norton

---

[3] Marker, DICOT 209.587-034,1991 WL 671802 (reasoning level 2); Office Helper, DICOT 239.567-010, 1991 WL 672232 (same); Order Caller, DICOT 209.667-014, 1991 WL 671807 (same); Photocopying-machine Operator, DICOT 207.685-014, 1991 WL 671745 (same).

.

had the following severe impairments: obesity, degenerative disc disease, migraines, post-traumatic stress disorder (PTSD), mood disorder, anxiety disorder, borderline personality disorder, attention deficit hyperactivity disorder (ADHD), impulse control disorder, chronic pain syndrome, and right shoulder joint replacement. (Tr. 18).

At Step 3, the ALJ determined that these impairments did not meet or medically equal the severity of any listed impairments. (Tr. 18-20).

Between Steps 3 and 4, the ALJ fashioned a residual functional capacity ("RFC"), considering the plaintiff's limitations from his impairments, stating that:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he is able to stand or walk 4 hours in an 8 hour day. He is able occasionally to climb ramps and stairs, stoop, kneel, crouch, and crawl but can never climb ladders and scaffolds. On the right, he is able frequently to reach in any direction. He is not to be exposed to unprotected heights or moving machinery. He is able to tolerate occasional exposure to heat, cold, humidity, vibration, and respiratory irritants. He is able to tolerate moderate noise. He is able to understand, remember, and carry out simple instructions. He is able to tolerate occasional interactions with supervisors and coworkers. He is able to tolerate occasional changes in workplace routine.

(Tr. 20).

This RFC was unmoored from any of the medical opinions deemed persuasive by the ALJ; moreover, it did not contain the one-to-two-step limitations

12

recommended by the state agency experts. In reaching this result, the ALJ rejected the treating source opinion of Dr. Achilleos, finding that opinion unpersuasive. (Tr. 25). As for the non-treating, non-examining state agency expert opinions, the ALJ stated that:

> The prior administrative medical finding of the State agency psychological consultant at the initial level that the claimant has moderate limitations in all areas of mental functioning but that *he is able to meet the mental demands for simple, one to two step tasks on a sustained basis is persuasive* (Exs. 1A, 2A). It is supported by a narrative explanation with signs and findings and is consistent with the overall evidence of record. It is consistent with the claimant's treatment history and objective findings of depressed/anxious mood but cooperative behavior, adequate attention/concentration, normal thought processes, normal speech, and at least fair insight and judgment (Exs. 6F, 8F, 10F). Additionally, it is consistent with the claimant's reported activities of daily living, including living alone, preparing meals, housecleaning, caring for pets, driving, shopping, going out to eat, attending school, working part-time, and spending time with friends (Exs. 4E, 8E).
>
> The State agency psychological consultant at the reconsideration level found that the claimant has moderate limitations in all areas of mental functioning except for mild limitations in understanding, remembering, or applying information but that *he is able to perform one or two step routine tasks in a stable environment; this is somewhat persuasive* (Exs. 7A, 8A). It is supported by a narrative explanation with signs and findings and is generally consistent with the overall evidence of record. The undersigned found moderate limitations in understanding, remembering, or applying information based on the claimant's reported difficulties with memory and understanding as well as objective findings of depressed/anxious mood (Exs. 6F, 8F, 10F). The undersigned also found that the claimant is not significantly limited in interacting with the general public based on his activities of daily living.

13

> For example, the claimant reported shopping in stores, going out to eat, attending school, and working part-time at a retail store (Exs. 4E, 8E).

(Tr. 24-25).

The ALJ's treatment of these opinions was notable in several respects. First, the ALJ declared both opinions persuasive and specifically noted that both opinions contained one-to-two-step mental limitations. However, without explanation, the ALJ did not include these mental limitations in the RFC which he fashioned for Norton.  Having made these findings, the ALJ then compounded this confusion when he concluded that Norton could not return to his past work but could perform other work in the national economy, all of which were reasoning level 2 tasks that exceeded the one-to-two-step task mental limitations found by the state agency experts that the ALJ deemed persuasive. (Tr. 27-28). The ALJ then determined that the plaintiff did not meet the stringent standard for disability set by the Act and denied this claim. (Id.)

This appeal followed. (Doc. 1). On appeal, Norton contends, *inter alia*, that the ALJ's mental RFC evaluation was flawed. After a review of the evidence, we agree that the ALJ's unexplained failure to incorporate or otherwise address the one-to-two-step mental limitations described by the medical experts the ALJ deemed persuasive does not provide us an adequate factual, legal and logical bridge between

14

the evidence and the ALJ's ultimate decision denying benefits. Therefore, we will remand this case for further consideration by the Commissioner.

## III.   Discussion

### A. Substantial Evidence Review – the Role of this Court

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.  See 42 U.S.C. §405(g); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008); Ficca v. Astrue, 901 F. Supp.2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Pierce v. Underwood, 487 U.S. 552, 565 (1988).  Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. Richardson v. Perales, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision]

15

from being supported by substantial evidence." Consolo v. Fed. Maritime Comm'n,

383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is

supported by substantial evidence the court must scrutinize the record as a whole."

Leslie v. Barnhart, 304 F. Supp.2d 623, 627 (M.D. Pa. 2003).

The Supreme Court has underscored for us the limited scope of our review in

this field, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. T-Mobile South, LLC v. Roswell, 574 U.S. ——, ——, 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." Ibid.; see, e.g., Perales, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison, 305 U.S. at 229, 59 S.Ct. 206. See Dickinson v. Zurko, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

Biestek, 139 S. Ct. at 1154.

The question before this Court, therefore, is not whether the claimant is

disabled, but rather whether the Commissioner's finding that she is not disabled is

supported by substantial evidence and was reached based upon a correct application of the relevant law. See Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence") (alterations omitted); Burton v. Schweiker, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); see also Wright v. Sullivan, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); Ficca, 901 F. Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

Several fundamental legal propositions which flow from this deferential standard of review. First, when conducting this review "we are mindful that we must not substitute our own judgment for that of the fact finder." Zirnsak v. Colvin, 777 F.3d 607, 611 (3d Cir. 2014) (citing Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005)). Thus, we are enjoined to refrain from trying to re-weigh the evidence. Rather our task is to simply determine whether substantial evidence supported the ALJ's findings. However, we must also ascertain whether the ALJ's decision meets the burden of articulation demanded by the courts to enable informed judicial review. Simply put, "this Court requires the ALJ to set forth the reasons for his

decision." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 119 (3d Cir. 2000).

As the Court of Appeals has noted on this score:

> In Burnett, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements . . . are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable meaningful judicial review. Id. at 120; see Jones v. Barnhart, 364 F.3d 501, 505 & n. 3 (3d Cir.2004). The ALJ, of course, need not employ particular "magic" words: "Burnett does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." Jones, 364 F.3d at 505.

Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 504 (3d Cir. 2009).

Thus, in practice ours is a twofold task. We must evaluate the substance of the ALJ's decision under a deferential standard of review, but we must also give that decision careful scrutiny to ensure that the rationale for the ALJ's actions is sufficiently articulated to permit meaningful judicial review.

This principle applies with particular force to legal challenges, like the claim made here, based upon alleged inadequacies in the articulation of a claimant's mental RFC. In Hess v. Comm'r Soc. Sec., 931 F.3d 198, 212 (3d Cir. 2019), the United States Court of Appeals recently addressed the standards of articulation that apply in this setting. In Hess the court of appeals considered the question of whether an RFC which limited a claimant to simple tasks adequately addressed moderate limitations on concentration, persistence, and pace. In addressing the plaintiff's

18

argument that the language used by the ALJ to describe the claimant's mental limitations was legally insufficient, the court of appeals rejected a *per se* rule which would require the ALJ to adhere to a particular format in conducting this analysis. Instead, framing this issue as a question of adequate articulation of the ALJ's rationale, the court held that: "as long as the ALJ offers a 'valid explanation,' a 'simple tasks' limitation is permitted after a finding that a claimant has 'moderate' difficulties in 'concentration, persistence, or pace.' " Hess v. Comm'r Soc. Sec., 931 F.3d 198, 211 (3d Cir. 2019). On this score, the appellate court indicated that an ALJ offers a valid explanation a mental RFC when the ALJ highlights factors such as "mental status examinations and reports that revealed that [the claimant] could function effectively; opinion evidence showing that [the claimant] could do simple work; and [the claimant]'s activities of daily living, . . . . " Hess v. Comm'r Soc. Sec., 931 F.3d 198, 214 (3d Cir. 2019).

In our view, the teachings of the Hess decision are straightforward. In formulating a mental RFC the ALJ does not need to rely upon any particular form of words. Further, the adequacy of the mental RFC is not gauged in the abstract. Instead, the evaluation of a claimant's ability to undertake the mental demands of the workplace will be viewed in the factual context of the case, and a mental RFC is sufficient if it is supported by a valid explanation grounded in the evidence.

19

## B. Initial Burdens of Proof, Persuasion, and Articulation for the ALJ

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); see also 20 C.F.R. §404.1505(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. §423(d)(2)(A); 20 C.F.R. §404.1505(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §404.1520(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant

20

is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC").  20 C.F.R. §404.1520(a)(4).

Between Steps 3 and 4, the ALJ must also assess a claimant's residual functional capacity (RFC).  RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)."  Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); see also 20 C.F.R. §§404.1520(e), 404.1545(a)(1).  In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis.  20 C.F.R. §404.1545(a)(2).

There is an undeniable medical aspect to an RFC determination, since that determination entails an assessment of what work the claimant can do given the physical limitations that the claimant experiences. Yet, when considering the role and necessity of medical opinion evidence in making this determination, courts have followed several different paths. Some courts emphasize the importance of medical opinion support for an RFC determination and have suggested that "[r]arely can a decision be made regarding a claimant's residual functional capacity without an assessment from a physician regarding the functional abilities of the claimant." Biller v. Acting Comm'r of Soc. Sec., 962 F. Supp. 2d 761, 778–79 (W.D. Pa. 2013)

21

(quoting <u>Gormont v. Astrue</u>, Civ. No. 11–2145, 2013 WL 791455 at *7 (M.D. Pa. Mar. 4, 2013)). In other instances, it has been held that: "There is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." <u>Titterington v. Barnhart</u>, 174 F. App'x 6, 11 (3d Cir. 2006). Further, courts have held in cases where there is no evidence of any credible medical opinion supporting a claimant's allegations of disability that "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." <u>Cummings v. Colvin</u>, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015).

These seemingly discordant legal propositions can be reconciled by evaluation of the factual context of these decisions. Those cases which emphasize the importance of medical opinion support for an RFC assessment typically arise in the factual setting where a well-supported medical source has identified limitations that would support a disability claim, but an ALJ has rejected the medical opinion which supported a disability determination based upon a lay assessment of other evidence. <u>Biller</u>, 962 F.Supp.2d at 778–79. In this setting, these cases simply restate the commonplace idea that medical opinions are entitled to careful consideration when making a disability determination, particularly when those opinions support a finding of disability. In contrast, when an ALJ is relying upon other evidence, such

22

as contrasting clinical or opinion evidence or testimony regarding the claimant's activities of daily living, to fashion an RFC courts have adopted a more pragmatic view and have sustained the ALJ's exercise of independent judgment based upon all of the facts and evidence. See Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006); Cummings v. Colvin, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015). In either event, once the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence. Burns v. Barnhart, 312 F.3d 113, 129 (3d Cir. 2002); see also Metzger v. Berryhill, No. 3:16-CV-1929, 2017 WL 1483328, at *5 (M.D. Pa. Mar. 29, 2017), report and recommendation adopted sub nom. Metzgar v. Colvin, No. 3:16-CV-1929, 2017 WL 1479426 (M.D. Pa. Apr. 21, 2017); Rathbun v. Berryhill, No. 3:17-CV-00301, 2018 WL 1514383, at *6 (M.D. Pa. Mar. 12, 2018), report and recommendation adopted, No. 3:17-CV-301, 2018 WL 1479366 (M.D. Pa. Mar. 27, 2018).

At Steps 1 through 4, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. Mason, 994 F.2d at 1064. Once this burden has been met by the claimant, it shifts to the Commissioner at Step 5 to show that jobs exist in significant number in the national economy that the claimant could

23

perform that are consistent with the claimant's age, education, work experience and RFC. 20 C.F.R. §404.1512(f); Mason, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Id. at 706-07. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 433 (3d Cir. 1999).

### C. Legal Benchmarks for the ALJ's Assessment of Medical Opinions

The plaintiff filed this disability application following a paradigm shift in the manner in which medical opinions were evaluated when assessing Social Security claims. Prior to March 2017, ALJs were required to follow regulations which defined medical opinions narrowly and created a hierarchy of medical source opinions with treating sources at the apex of this hierarchy. However, in March of 2017, the

24

Commissioner's regulations governing medical opinions changed in a number of fundamental ways. The range of opinions that ALJs were enjoined to consider were broadened substantially, and the approach to evaluating opinions was changed from a hierarchical form of review to a more holistic analysis. As one court as aptly observed:

> The regulations regarding the evaluation of medical evidence have been amended for claims filed after March 27, 2017, and several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded. According to the new regulations, the Commissioner "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion." Revisions to Rules Regarding the Evaluation of Medical Evidence ("Revisions to Rules"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867–68 (Jan. 18, 2017), see 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and "other factors." 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).
>
> Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." Id. at §§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1). The two "most important factors for determining the persuasiveness of medical opinions are consistency and supportability," which are the "same factors" that formed the foundation of the treating source rule. Revisions to Rules, 82 Fed. Reg. 5844-01 at 5853.
>
> An ALJ is specifically required to "explain how [he or she] considered the supportability and consistency factors" for a medical opinion. 20

C.F.R. §§ 404.1520c (b)(2), 416.920c(b)(2). With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." Id. at §§ 404.1520c(c)(1), 416.920c(c)(1). The regulations provide that with respect to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." Id. at §§ 404.1520c(c)(2), 416.920c(c)(2).

Under the new regulations an ALJ must consider, but need not explicitly discuss, the three remaining factors in determining the persuasiveness of a medical source's opinion. Id. at §§ 404.1520c(b)(2), 416.920c(b)(2). However, where the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she considered those factors contained in paragraphs (c)(3) through (c)(5). Id. at §§ 404.1520c(b)(3), 416.920c(b)(3).

Andrew G. v. Comm'r of Soc. Sec., No. 3:19-CV-0942 (ML), 2020 WL 5848776, at

*5 (N.D.N.Y. Oct. 1, 2020).

Oftentimes, as in this case, an ALJ must evaluate various medical opinions.

When presented with a disputed factual record, it is well-established that "[t]he ALJ

– not treating or examining physicians or State agency consultants – must make the

ultimate disability and RFC determinations." Chandler v. Comm'r of Soc. Sec., 667

F.3d 356, 361 (3d Cir. 2011). However, the ALJ must still fully articulate the basis

of this medical opinion evaluation. Thus, when evaluating medical opinions "the

26

ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Mason, 994 F.2d at 1066). It also follows that "when a medical opinion is found persuasive and contains a limitation to one- and two-step tasks, the ALJ is obligated to either: (1) include the limitation in the RFC and limit the claimant to reasoning level one occupations, or, (2) identify the substantial evidence that the ALJ is relying on in rejecting the limitation." Cruz, 2025 WL 2813882, at *8.

These legal benchmarks guide us in the instant case.

### D. **This Case Will Be Remanded.**

After a review of the record, we conclude that the ALJ's failure to more thoroughly address or incorporate the state agency experts' opinions which the ALJ deemed persuasive that limited Norton to one- and two-step tasks was error. At the outset, in reviewing this ALJ's decision we find ourselves at the intersection between two well-settled paradigms in the Social Security field. First, our highly deferential standard of review empowers "[t]he ALJ – not treating or examining physicians or State agency consultants – [to] make the ultimate disability and RFC determinations." Chandler, 667 F.3d at 361. Thus, our decision in this case in no way undercuts the legal tenet that an ALJ is not required to adopt every limitation opined by the experts but "can formulate an RFC based on different parts from the

27

different medical opinions." <u>Durden</u>, 191 F.Supp.3d at 455. However, at base, an ALJ must draft a reviewable opinion that is grounded in the evidence and provides the court with an adequately articulated rationale for the limitations adopted. Here, without the benefit of an explanation by the ALJ, we are unable to determine whether the ALJ's failure to address the limitation to one- and two-step tasks in the sole medical opinion the ALJ found persuasive was inadvertent or based upon the substantial evidence of record.

This assessment by the ALJ runs afoul of several well-settled legal tenets. First, as enumerated above, an ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." <u>Cotter</u>, 642 F.2d at 704. Furthermore, the ALJ must also "indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." <u>Schaudeck</u>, 181 F.3d at 433. Moreover, it is well-settled that an ALJ should refrain from substituting his own lay opinion in place of a medical opinion. <u>Morales</u> 225 F.3d at 319. These mandates apply here in the context of the ALJ's assessment of medical opinion evidence limiting a claimant to one-to-two-step tasks. Indeed, this court, and others, have applied these paradigms in specifically concluding that "when a medical opinion is found persuasive and contains a limitation to one- and two-step tasks, the ALJ is obligated to either: (1) include the limitation in the RFC and limit the claimant

28

to reasoning level one occupations, or (2) identify the substantial evidence that the ALJ is relying on in rejecting the limitation." Cruz, 2025 WL 2813882, at *8. See also Rita R. v. Kijakazi, No. 21 C 5631, 2023 WL 2403139, at *3–4 (N.D. Ill. Mar. 8, 2023) ("Indeed, an ALJ is required to provide a thorough and appropriate explanation for rejecting a state agency psychologist's opinion that a claimant is limited to one-to-two step tasks.") The ALJ's decision in this case neither included the one-to-two-step limitation, nor explained why it was not incorporated into the RFC. This was error.

This error is not harmless here since the ALJ's conclusion that Norton was not disabled is based upon his ability to perform work in occupations requiring a reasoning level of 2, a reasoning level that was inconsistent with a limitation to one-to two-step tasks. As this court explained:

> The DOT defines occupations by reasoning level and defines "reasoning level one" as the ability to "apply commonsense understanding to carry out *simple one-or two-step instructions.*" The similarity of that language to "one- and two-step tasks," leads us to conclude that an individual limited to "one-and two-step tasks" is likewise limited to "reasoning level one" occupations. Importantly, this limitation *is* dischargeable: an ALJ may find otherwise, so long as they rely on and cite to substantial evidence that adequately explains why they are omitting the limitation in the claimant's RFC despite having found the relevant medical opinion to be persuasive.

> Additionally, courts in eight of the eleven circuits where a District court has considered this issue have held that "simple repetitive tasks" and

29

> "one- and two-step tasks" are legally distinct limitations. And all but one of these cases also found that a limitation to "one- and two-step tasks" necessarily limits the claimant to reasoning level one occupations.

Cruz, 2025 WL 2813882, at *7. See also Id. at *3–4 (N.D. Ill. Mar. 8, 2023). See also Rita R., 2023 WL 2403139, at *3–4 ("The ALJ's error is of crucial importance because a limitation to 'simple tasks' (the RFC limitation the ALJ found here) encompasses jobs that may involve complexity beyond one-to-two step tasks"); Daniel M. v. Kijakazi, No. 2:21-CV-243, 2023 WL 154909, at *3 (D. Vt. Jan. 11, 2023) (collecting cases) (concluding reasoning Levels 2 and 3 are not consistent with "simple, one-to-two step tasks").

While in certain circumstances this error may be harmless, we cannot find the error harmless on the facts of the instant case for at least two reasons. First, at bottom, to sustain this decision we would have to discount the ALJ's statement that the state agency experts' opinions that Norton can perform one- and two-step tasks were persuasive. Thus, to affirm this decision we would necessarily have to reweigh the evidence. This we may not do. See Chandler, 667 F.3d at 359 (citing Richardson v. Perales, 402 U.S. 389, 401 (1971) ("Courts are not permitted to re-weigh the evidence or impose their own factual determinations"); see also Gonzalez v. Astrue, 537 F.Supp.2d 644, 657 (D. Del. 2008) ("In determining whether substantial

30

evidence supports the Commissioner's findings, the Court may not undertake a *de novo* review of the Commissioner's decision and may not re-weigh the evidence of the record") (internal citations omitted)). In addition, we would have to substitute a different rationale for this decision, one which would partially discount the ALJ's evaluation of the state agency exert opinions. We cannot follow this course since it is well-settled that "[t]he ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision; [we] may not offer a post-hoc rationalization." Schuster v. Astrue, 879 F. Supp. 2d 461, 466 (E.D. Pa. 2012) (citations omitted).

Simply put, more was needed here by way of explanation on the ALJ's part. Indeed, a rising tide of caselaw supports the view that the ALJ erred in failing to incorporate or otherwise address the one and two step task limitation opined by the expert whose opinion he found persuasive.[4] Since the ALJ's burden of articulation

---

[4] See e.g., ADRIENNE LOMBARDO, Plaintiff v. FRANK BISIGNANO, Comm'r of Soc. Sec., Defendant., No. 4:24-CV-56, 2026 WL 674198, at *1 (M.D. Pa. Mar. 10, 2026); SARAH C., Plaintiff, v. FRANK BISIGNANO, Defendant., No. 1:23-CV-01828, 2026 WL 625094, at *1 (M.D. Pa. Mar. 5, 2026); FRED MCCLEARY, Plaintiff v. FRANK BISIGNANO, Comm'r of Soc. Sec., Defendant., No. 4:25-CV-26, 2026 WL 625113, at *1 (M.D. Pa. Mar. 5, 2026); Delillo v. Bisignano, No. 4:25-CV-523, 2026 WL 592389, at *1 (M.D. Pa. Mar. 3, 2026); Whitney v. Bisignano, No. 4:24-CV-1950, 2026 WL 522922, at *10 (M.D. Pa. Feb. 25, 2026); Cruz v. Bisignano, No. 1:24-CV-1966, 2025 WL 2813882, at *7 (M.D. Pa. Sept. 30, 2025); Michelle M. v. Bisignano, No. 3:23-CV-02163, 2025 WL 2713737, at *7 (M.D. Pa. Sept. 23, 2025); Warren v. Dudek, No. 1:24-CV-635, 2025 WL 1168276, at *6

31

is not met in the instant case, this matter will be remanded for further consideration by the Commissioner.

Yet, while we find that these errors compel a remand in this case, nothing in this Memorandum Opinion should be deemed as expressing a judgment on what the ultimate outcome of any reassessment of this evidence should be. Instead, that judgment should remain to province of the ALJ. Finally, because we have vacated and remanded the decision of the Commissioner on these grounds, we decline to address any other issues presented by the parties since "[a] remand may produce different results on these claims, making discussion of them moot." Burns v. Colvin, 156 F.Supp.3d 579, 598 (M.D. Pa. Jan. 13, 2016).

Finally, we close as we began, by observing that one root cause of this remand is an issue which courts have repeatedly observed, the apparent failure of legal and medical professionals to attach a common meaning to the words they use. Thus, we note for the Commissioner that the casual conflation of one-to-two-step RFCs in medical opinions with widely varying assessments of the claimant's degree of impairment, if unaddressed, will continue to compel remands in the future.

---

(M.D. Pa. Apr. 22, 2025); Shipman v. Kizakazi, No. 3:22-CV-00636, 2023 WL 5599607, at *10 (M.D. Pa. Aug. 29, 2023).

32

## IV.   Conclusion

Accordingly, for the foregoing reasons, the plaintiff's request for a new administrative hearing is GRANTED, the final decision of the Commissioner denying these claims is vacated, and this case is remanded to the Commissioner to conduct a new administrative hearing.

An appropriate order follows.

*s/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

DATED: March 18, 2026